IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEVIN QUILLINAN, and
CYPORETTE QUILLINAN,

    Plaintiffs

  v.

ANNA PAPAVASSILIOU,

    Defendant.

No. C 12-04159 CRB

**ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE**

    This case concerns Kevin and Cyporette Quillinan's ("Plaintiffs'") residency status in Anna Papavassiliou's ("Defendant's") multi-unit residential apartment building under a Section 8 Model Lease. FAC (dkt. 22) at 4. Plaintiffs allege that they are entitled to remain in their rental unit and pay only the pro-rata unsubsidized portion of the rent pursuant to the Model Lease. Id. Conversely, Defendant alleges that because Plaintiffs' housing assistance was terminated with respect to that unit, Plaintiffs are responsible for the entire rental price of the unit. Def.'s Reply (dkt. 28) at 8. Before the Court is Defendant's Motion to Dismiss Plaintiffs' claim for lack of subject matter jurisdiction (dkt. 24) and Defendant's Motion to Strike Plaintiffs' Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss (dkt. 33). For the reasons discussed below, the Court GRANTS Defendant's Motion to Dismiss without leave to amend, holding that the Court lacks subject-

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Court also GRANTS Defendant's Motion to Strike, holding that Plaintiffs' Reply violates Local Rule 7-3(d).

# I. BACKGROUND

The federal government provides rental assistance to low-income, elderly, and disabled families through the Section 8 housing program, codified as amended at 42 U.S.C. § 1437f. The Section 8 housing program is funded by the federal government and administered by local public housing authorities ("PHAs"). Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1152 (9th Cir. 2011). The PHA administers the Section 8 housing program via Housing Assistance Project ("HAP") contracts with eligible owners.[1] 24 C.F.R. § 982.162. Here, the Berkeley Housing Authority ("BHA") – not a party in this case – is the PHA responsible for administering the Section 8 housing program. FAC at 2.

Defendant entered into a HAP contract with the BHA in order to provide housing assistance to Plaintiffs. Opp'n (dkt. 27) at 4. Pursuant to the HAP contract, Defendant agreed to incorporate the "Tenancy Addendum"[2] into any Section 8 Model Lease that she signed with Plaintiffs. Id. Subsequently, Plaintiffs and Defendant executed the Section 8 Model Lease at issue in this case. Id.[3]

On September 10, 2008, the BHA sent a letter to Plaintiffs indicating that the HAP contract between Defendant and the BHA had terminated effective August 31, 2008 for

---

[1] An annual contributions contract ("ACC") is a written contract between the Department of Housing and Urban Development ("HUD") and a PHA. 24 CFR § 982.151. Under the ACC, HUD agrees to make payments to the PHA, over a specified term, for housing assistance payments to owners. Id.

[2] The Tenancy Addendum references Section D and other provisions of the Model Lease between Plaintiffs and Defendant, and was incorporated pursuant to the HAP contract between Defendant and the BHA. Opp'n at 4. Plaintiffs have included a copy of the Tenancy Addendum as Exhibit B to their Reply. Pls.' Reply (dkt. 31), Ex. B. Pursuant to this Order, Plaintiffs' Reply is stricken from the record for failure to comply with Local Rule 7-3(d). However, the Court has included references to the pleading and to the associated exhibits for clarity.

[3] The HAP contract between the BHA and Defendant owner is separate and distinct from the Model Lease between the Defendant owner and the Plaintiff tenants. Both the HAP contract and portions of the lease between the owner and tenant are required program contracts that must meet HUD specifications. 24 CFR § 982.162.

2

"failure to meet Housing Authority Quality Standards (HQS)." See Opp'n, at 6; see also Opp'n, Ex. B.[4] Plaintiffs allege that Defendant is at fault for the HAP contract termination. FAC at 5. The BHA notice stated that Plaintiffs would be issued a transfer voucher for a suitable unit that met HUD approved regulations. See Opp'n, Ex. B. The notice also stated that if Plaintiffs remained in possession of the unit past September 30, 2008, they would be responsible for the full rent after that date. Id. Plaintiffs remained in possession of the unit and their housing assistance terminated on August 31, 2008. Opp'n at 5-6. Beginning in September of 2008, and for approximately 15 months thereafter, Plaintiffs paid the full rent for their unit. Id. at 6. In February 2010, Plaintiffs discontinued paying rent upon the belief that, pursuant to the Tenancy Addendum in the "last known lease,"[5] they were only liable to pay their pro-rata share of the rent. Opp'n at 6; FAC at 6.

In 2009, Plaintiffs initiated legal proceedings against Defendant in San Francisco County Superior Court,[6] alleging "Breach of the Warranty of Habitability and Related Torts," Case No. RG-10550466.[7] FAC at 6. Of particular relevance here, the Alameda County Superior Court sustained Defendant's demurrer without leave to amend as to Plaintiffs' ninth cause of action for Third Party Beneficiary Breach of Contract.[8] Mot. to Dismiss at 4. This

---

[4] HUD is also responsible for promulgating regulations related to the administration of the Section 8 housing program. The HQS are among such regulations. 24 CFR § 982.401-06.

[5] The "last known lease" appears to reference the Section 8 Model Lease between Plaintiffs and Defendant, reproduced as Exhibit A in Plaintiffs' now stricken Reply. Pls.' Reply, Ex. A.

[6] Plaintiffs' case was subsequently transferred to Alameda County Superior Court on May 5, 2010. Mot. to Dismiss at 3.

[7] Between February 1, 2010 and December 13, 2011, Plaintiffs filed three Amended Complaints in state court. Mot. to Dismiss at 3-4. Defendant asserts that at various times the state court proceedings have included claims for Intentional Breach of Housing Authority Contract Causing Loss of Section 8 Housing Subsidy, General Negligence, Retaliation, Property Damage, Personal Injury, Violation of Civil Code § 1941, and Violation of Civil Code § 1942, Premises Liability, Conversion, Breach of Contract, Nuisance, Unfair Business Practices, Violation of Berkeley Rent Stabilization Board Regulation, Third Party Beneficiary Breach of Contract w/ Addendum, and Intentional Infliction of Emotional Distress. Id.

[8] The HAP contract between Defendant and the BHA explicitly states that "[t]he family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B." Pls.' Reply, Ex. B, Part B, ¶ 12. Owner's breach of HAP contract for failure to maintain the unit in

3

1 appears to be the only state court adjudication on the merits of this dispute to date.[9] On July
2 30, 2012, Case No. RG-10550466 was dismissed without prejudice pursuant to Plaintiffs'
3 request for dismissal. FAC at 7; Mot. to Dismiss at 4. On September 28, 2012, Plaintiffs
4 renewed proceedings against Defendant in Alameda County Superior Court, Case No. RG-
5 12649949, alleging "substantially the same causes of action." FAC at 4, 7. That action is
6 currently pending in Alameda County Superior Court. Id. at 4.

7 On October 30, 2012, Plaintiffs filed in this Court a First Amended Complaint for
8 declaratory relief only. See generally FAC. On November 9, 2012, Defendant filed the
9 present Motion to Dismiss for lack of subject matter jurisdiction. See generally Mot. to
10 Dismiss. On January 16, 2013, Defendant filed the present Motion to Strike for violation of
11 Local Rule 7-3(d). See generally Mot. to Strike.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. Though the defendant makes the motion, the plaintiff bears the burden of establishing subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994); Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1) jurisdictional attack may be facial or factual.[10] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial attack, a motion will be granted if the complaint, when

---

accordance with the HQS is included amongst these provisions in Part B. See id. at ¶ 10.

[9] Plaintiffs argue that they are not asserting or attempting to litigate any breach of contract by and between Defendant and the BHA. FAC at 3. Nevertheless, Plaintiffs repeatedly reference Defendant's alleged breach of the HAP contract as the ultimate source of the present dispute. See FAC at 5 (stating that "[t]he sole issue that Plaintiffs desire to have resolved by this action for Declaratory Relief, are the rights and duties of each party to the model section 8 lease, pursuant to the Tenancy Addendum").

[10] Defendant asserts that her challenge to federal subject matter jurisdiction is a "factual attack on the pleadings." Mot. to Dismiss at 8. Nevertheless, Plaintiffs' complaint does not appear to allege facts sufficient to establish subject matter jurisdiction, making it subject to a facial attack as well.

4

considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. See, e.g., Savage v. Glendale Union High School, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

Alternately, the defendant can take issue with subject-matter jurisdiction on a factual basis. Thornhill Publ'g Co. v. Gen. Tel. & Elect. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891). When resolving a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

Further, when a plaintiff appears *pro se*, as Plaintiffs do here, the complaint must "be liberally construed" and be "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Finally, if a court grants a motion to dismiss, it generally must allow the plaintiff leave to amend, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

**III. DISCUSSION**

The Declaratory Judgment Act ("DJA") permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. However, before declaratory relief may be granted, federal subject matter jurisdiction requirements must be independently satisfied. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). First, the court must determine if there is an actual case or controversy within the court's jurisdiction. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2004). The ultimate inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

5

Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Second, the court must exercise its discretion in determining whether to exercise such jurisdiction. Id. This Order addresses each step in turn.

### A. Plaintiffs Fail to Show that this Dispute Presents a Case or Controversy Warranting the Exercise of Jurisdiction Under 28 U.S.C. § 1331

Pursuant to 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The crux of Plaintiffs' argument for why this Court has jurisdiction is that the Model Lease at issue was drawn under the auspices of 42 U.S.C. § 1437f. Opp'n at 4. Specifically, Plaintiffs allege that "[b]ecause execution of the HAP between Defendant landlord and the BHA, and execution of the Model Lease between Defendant landlord and Plaintiffs . . . , relied on and were embedded with, Federal HUD funding of the housing assistance payments released to the BHA via Annual Contribution Contracts between BHA and HUD, and paid to Defendant landlord by the BHA," federal subject matter jurisdiction is proper. Opp'n at 4.

However, that a contract is governed by a specific federal statutory and regulatory scheme does not in and of itself confer jurisdiction. K2 Am. Corp. v. Roland Oil & Gas, LLC, 653 F.3d 1024, 1031 (9th Cir. 2011). Rather, the availability of federal relief depends on the resolution of a substantial question of federal law. Id. In K2, the court found that because "K2 [did] not plead any irregularities as between the alleged leaseholder . . . , the lessors . . . , and the federal government, such that the validity of the Lease [could] be answered only by reference to federal statutory or common law," federal jurisdiction was improper. Id. at 1032 (internal quotations omitted) (emphasis added); see also Littell v. Nakai, 344 F.2d 486, 487-88 (9th Cir. 1965) (finding no federal question where the complainant did not challenge the validity or construction of the governing statutes and the dispute could be resolved by interpreting the contract).

Similarly here, the fact that the Model Lease and Tenancy Addendum were drafted pursuant to federal authority is not dispositive of the issue of federal jurisdiction because resolution of the dispute appears to turn on the interpretation of language in the Model Lease

6

and incorporated Tenancy Addendum. Plaintiffs have failed to show how the interpretation of the provisions therein implicates a substantial and contested issue of federal law. Thus, without more, Plaintiffs have not satisfied the threshold question of jurisdiction.

Plaintiffs cite Park Village as being analogous to this case. Opp'n at 7-8. However, in Park Village, plaintiff tenants brought suit against defendant owners for violating a specific provision of 42 U.S.C. § 1437f. 636 F.3d at 1153-55. In contrast, here "Plaintiffs are requesting nothing more than to be able to enforce . . . Section D of the [M]odel [L]ease." Opp'n at 8. Unlike the plaintiffs in Park Village, the Plaintiffs in this case have not identified a specific provision of federal law of which Defendant is in violation.

### 1. Conflicting Provisions of the Model Lease and Tenancy Addendum Do Not Implicate a Substantial Federal Question

In Plaintiffs' most recent pleading, they explain for the first time that they are requesting that the Court resolve "what appears to be a conflict in the provisions of the Tenancy Addendum."[11] Pls.' Reply at 5. Section 5 of the Model Lease and Tenancy Addendum states that "[t]he tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease." FAC, Ex. A, ¶ 5; Pls.' Reply, Ex. B, Part C, ¶ 5. However, Section 9, titled "Lease: Relation to HAP Contract," states that "[i]f the HAP contract terminates for any reason, the lease terminates automatically." Pls.' Reply, Ex. B, Part C, ¶ 9. Similarly, Section 10, titled "PHA Termination of Assistance," states that "[t]he PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the lease terminates automatically." Pls.' Reply, Ex. B, Part C, ¶ 10.

---

[11] Again, the Court is cognizant of the fact that Plaintiffs' Reply is stricken as improper and in violation of Local Rule 7-3(d). Mot. to Strike at 2. Nevertheless, the Court references Plaintiffs' improper pleading because it best articulates the ultimate dispute. Additionally, Plaintiffs only included a full copy of the Tenancy Addendum as Exhibit B in this improper pleading. See Pls.' Reply, Ex. B.

7

This apparent discrepancy can be resolved as a matter of mere contract interpretation. Additionally, HUD has promulgated a substantial body of federal regulation to aid in the interpretation of these provisions. Even where consultation of these federal regulations would be helpful or even required, it is not clear why this could not and should not be done in state court, where the bulk of Plaintiffs' claims related to this dispute are pending.

### 2. The Underlying Coercive Action that Plaintiffs Seek to Enjoin Does Not Arise Under Federal Law

"Federal courts have regularly taken jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 19 (1983). However, if the underlying coercive claim does not "arise under" federal law, there is no federal question jurisdiction over the declaratory judgment cause of action. See Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1090 (9th Cir. 2002).

Here, the underlying coercive claim that Plaintiffs seek to prevent via declaratory and injunctive relief is eviction. See Opp'n at 8-9. While Plaintiffs' concern regarding eviction is undoubtedly real, it is not clear why Plaintiffs are entitled to an injunction in federal court. Any eviction proceedings that Defendant might pursue would proceed under state law. Indeed, Plaintiffs themselves included a copy of the unlawful detainer action filed against them in Alameda County Court.[12] See Opp'n, Ex. A.

Plaintiffs cite Barrientos v. 1801-1825 Morton LLC, 583 F.3d 1197 (9th Cir. 2009), for the proposition that this Court has subject matter jurisdiction to enjoin eviction proceedings in state court. See Opp'n at 8. However, Barrientos is distinguishable. At issue in Barrientos was a direct conflict between a city ordinance and a federal regulation pertaining to Section 8 housing assistance. Here, Plaintiffs have not identified any such conflict between state or local law and 42 U.S.C. § 1437f or any federal regulation related thereto. Resolution of the present controversy does not require the resolution of an apparent

---

[12] Defendant's eviction action was subsequently dismissed. See FAC at 7.

conflict between federal and state/city law as it did in Barrientos. Rather, the controversy turns on interpretation of the Model Lease and Tenancy Addendum.

### B. Special Concerns Regarding Federal Question Jurisdiction Under the Declaratory Judgment Act Counsel Against Exercising Jurisdiction

Even if this case presented a federal question sufficient to warrant the exercise of jurisdiction, the Court would decline to do so. The Supreme Court has stated that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the parties." Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942). Thus, "when a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court." Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991) (citing Brillhart, 316 U.S. at 495). When determining whether to exercise jurisdiction over a declaratory judgment action, "[t]he district court should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Neilmed Prods., Inc. v. Med-Sys., Inc., 472 F. Supp. 2d 1178, 1180 (N.D. Cal. 2007) (quoting Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998)). Additionally, the Court may consider the following:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.

Id.

Plaintiffs allege that the present claim for declaratory relief is separate and distinct from the claims, including a breach of contract claim, pending in state court. FAC at 5. Nevertheless, Plaintiffs repeatedly characterize this action as concerning the interpretation of the rights and duties of each party to the Model Lease and Tenancy Addendum. FAC at 2, 4-5. Following Chamberlain and Brillhart, the Court finds that the entire suit should be heard

9

in state court. Ultimately, in addressing the Plaintiffs' cause of action for breach of contract, the state court will determine the rights and obligations of the parties with respect to the Model Lease and Tenancy Addendum. This is the very same thing that the Plaintiffs are asking this Court to do. Exercising jurisdiction over Plaintiffs' federal declaratory judgment claim would be duplicative and a waste of judicial resources. Nor is it clear that a declaratory action would settle all aspects of the dispute. So as not to upset the delicate balance of authority between state and federal courts, this Court will defer to the Alameda County Court to resolve all issues related to the interpretation of the Model Lease and Tenancy Addendum.

### F. Defendant's Motion to Strike

Plaintiffs' Reply is improper and in violation of Local Rule 7-3(d), which states that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." Plaintiffs did not seek Court approval prior to filing their Reply. Thus, the Court grants Defendant's Motion to Strike.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss without leave to amend and GRANTS Defendant's Motion to Strike.

**IT IS SO ORDERED.**

Dated: February 1, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE